UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| BN FARM LLC d/b/a THE FARM BAR AND GRILLE ESSEX, BNIPSWICH LLC d/b/a FOX CREEK TAVERN f/k/a EN FUEGO COCINA MEXICANA, BN MARINA LLC, BNR BEVERLY INC d/b/a EN FUEGO BEVERLY, BNR SALISBURY LLC d/b/a PORTSIDE WATERFRONT KITCHEN & BAR, BNR METHUEN LLC d/b/a THE MILLER'S TAVERN a/k/a THE MILLER TAVERN, BNFARMDOVER, LLC d/b/a THE FARM BAR & GRILLE DOVER, BNRFARMMANCH LLC d/b/a THE FARM BAR & GRILLE MANCHESTER, BNR HAMPTON LLC d/b/a THE 401 TAVERN and BN REALTY LIMITED LIABILITY COMPANY, <br>        Plaintiffs, <br><br> v. <br><br> THE CINCINNATI CASUALTY COMPANY, <br>        Defendant. | **COMPLAINT AND JURY CLAIM** <br><br> **Civil Action No.** |

_____

## I.      PARTIES

1.      Plaintiff, BN Farm LLC d/b/a The Farm Bar and Grille Essex ("BN Farm Essex"), is a limited liability company duly organized under, and existing pursuant to, the laws of the Commonwealth of Massachusetts with a usual place of business located at 233 Western Avenue, Town of Essex, County of Essex, Commonwealth of Massachusetts.

2.      Plaintiff, BNIpswich LLC d/b/a Fox Creek Tavern f/k/a En Fuego Cocina Mexicana ("BN Ipswich"), is a limited liability company duly organized under, and existing pursuant to, the laws of the Commonwealth of Massachusetts with a usual place of business located at 141 High Street, Town of Ipswich, County of Essex, Commonwealth of Massachusetts.

3.      The plaintiff, BN Marina LLC ("BN Marina"), is a limited liability company duly organized under, and existing pursuant to, the laws of the Commonwealth of Massachusetts with a usual place of business located at 121 East Main Street, City of Gloucester, County of Essex, Commonwealth of Massachusetts.

4.      The plaintiff, BNR Beverly Inc. d/b/a En Fuego Beverly ("BNR Beverly"), is a corporation duly organized under, and existing pursuant to, the laws of the Commonwealth of Massachusetts with a usual place of business located at 131 Rantoul Street, City of Beverly, County of Essex, Commonwealth of Massachusetts.

5.      The plaintiff, BNR Salisbury LLC d/b/a Portside Waterfront Kitchen and Bar ("BNR Salisbury"), is a limited liability company duly organized under, and existing pursuant to, the laws of the Commonwealth of Massachusetts with a usual place of business located at 175 Bridge Road, Town of Salisbury, County of Essex, Commonwealth of Massachusetts.

6.      The plaintiff, BNR Methuen LLC d/b/a The Miller's Tavern a/k/a The Miller Tavern ("BNR Methuen"), is a limited liability company duly organized under, and existing pursuant to, the laws of the Commonwealth of Massachusetts with a usual

place of business located at 105A Pleasant Valley Street, City of Methuen, County of

Essex, Commonwealth of Massachusetts.

7.     The plaintiff, BNRFarmDover, LLC d/b/a The Farm Bar and Grille Dover

("BNR Farm Dover"), is a limited liability company duly organized under, and existing

pursuant to, the laws of the State of New Hampshire with a usual place of business

located at 25A Portland Avenue, City of Dover, County of Strafford, State of New

Hampshire.

8.     The plaintiff, BNRFarmManch LLC d/b/a The Farm Bar and Grille

Manchester ("BN Farm Manchester"), is a limited liability company duly organized

under, and existing pursuant to, the laws of the State of New Hampshire with a usual

place of business located at 1181 Elm Street, City of Manchester, County of

Hillsborough, State of New Hampshire.

9.     The plaintiff, BNRHampton LLC d/b/a The 401 Tavern ("BNR

Hampton"), is a limited liability company duly organized under, and existing pursuant

to, the laws of the State of New Hampshire with a usual place of business located at 401

Lafayette Road, Town of Hampton, County of Rockingham, State of New Hampshire.

10.    The plaintiff, BN Realty Limited Liability Company ("BN Realty"), is a

limited liability company duly organized under, and existing pursuant to, the laws of

the Commonwealth of Massachusetts with a usual place of business located at 233

Western Avenue, Town of Essex, County of Essex, Commonwealth of Massachusetts.

At all times material hereto, BN Realty has owned the real estate out of which BN Farm

Essex operated and to which rent was paid by BN Farm Essex when it operated.[1]

11.     The defendant, The Cincinnati Casualty Company ('Cincinnati"), is a

property and casualty insurance company authorized to conduct business in the

Commonwealth of Massachusetts with a usual place of business located at 6200 S.

Gilmore Road, City of Fairfield, County of Butler, State of Ohio.

## II.      JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as

the parties are completely diverse in citizenship and the amount in controversy exceeds

$75,000.00, exclusive of interest and costs.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because most

of the plaintiffs' principal places of business are in this District, and a substantial

portion of the events and omissions giving rise to the claims and losses occurred in this

District.

## III.      FACTS

### A.      The Plaintiffs' Business

14.     At all times material hereto, the plaintiffs have been in the restaurant and

bar business offering onsite food and alcohol service to their patrons.

---

[1]      BN Farm Essex, BN Ipswich, BN Marina, BNR Beverly, BNR Salisbury, BNR
Methuen, BNR Farm Dover, BN Farm Manchester, BNR Hampton and BN Realty shall
be collectively referred to as "the plaintiffs."

15.     At all times material hereto prior to March 16, 2020, BNR Farm Dover, BN Farm Manchester and BNR Hampton were fully operational in the State of New Hampshire.

16.     At all times material hereto prior to March 17, 2020, BN Farm Essex, BN Ipswich, BN Marina, BNR Beverly, BNR Salisbury, BNR Methuen and BN Realty were fully operational in the Commonwealth of Massachusetts.

### B.      The COVID-19 Pandemic

17.     On January 30, 2020, the World Health Organization designated the 2019 novel Coronavirus ("COVID-19") outbreak as a Public Health Emergency of International Concern.

18.     On January 31, 2020, United States Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the entire United States to aid the nation's healthcare community in responding to COVID-19.

19.     The disease caused by COVID-19 is a highly contagious and, at times, fatal respiratory disease.

20.     According to scientists, COVID-19 has several modes of transmission, including through symptomatic transmission, pre-symptomatic transmission or asymptomatic transmission.

21.     Symptomatic transmission refers to transmission by an individual who is experiencing symptoms associated with the virus who then transfers COVID-19 to another individual. Data from published studies provide evidence that COVID-19 is primarily transmitted from symptomatic people to others who are in close contact

through respiratory droplets, by direct contact with infected persons or by contact with contaminated objects and surfaces.

22.     The incubation period for COVID-19 — the time between exposure to the virus (becoming infected) and symptom onset — averages 5-6 days; however, the incubation period can be up to 14 days.

23.     During this period, also known as the "pre-symptomatic" period, some infected persons can be contagious such that pre-symptomatic transmission can occur before the infected person manifests or experiences any symptoms.

24.     COVID-19 also can and does live on contaminated objects or surfaces.

25.     Surfaces, once physically affected by COVID-19, are referred to as fomites.

26.     Fomites consist of both porous and nonporous surfaces or objects that can become contaminated with a virus and serve as vehicles in transmission.

27.     During and after illness, viruses are shed in large numbers in body secretions, including blood, feces, urine, saliva and nasal fluid.

28.     Fomites become contaminated with virus by direct physical contact with body secretions or fluids, contact with soiled hands, contact with aerosolized virus (large droplet spread) released while talking, sneezing, coughing, or vomiting or contact with airborne virus that settles after disturbance of a contaminated fomite (*e.g.*, shaking a contaminated tablecloth).

29.     Once a fomite is contaminated, the transfer of infectious virus may readily occur between inanimate and animate objects, or vice versa, and between two separate fomites.

30.     The worldwide outbreak of COVID-19 and the effects of its extreme risk of person-to-person transmission throughout the United States has been declared a disaster that impacts the health, security and safety of the general public.

31.     On March 11, 2020, the World Health Organization declared the COVID-19 outbreak as a pandemic, which declaration remains in effect.

## C.     Proclamations of States of Emergency

32.     On March 10, 2020, Governor Charles D. Baker of the Commonwealth of Massachusetts issued Executive Order No. 591 in which he declared a State of Emergency in the Commonwealth of Massachusetts in response to the COVID-19 outbreak.

33.     On March 13, 2020, President Donald J. Trump declared a National Emergency under the federal Stafford Act due to the COVID-19 pandemic.

34.     On March 13, 2020, Governor Christopher T. Sununu of the State of New Hampshire issued Executive Order 2020-04 in which he declared a State of Emergency in the State of New Hampshire in response to the COVID-19 pandemic.

35.     The aforesaid proclamations of States of Emergency in the Commonwealth of Massachusetts and State of New Hampshire remain in effect.

### D.   Executive Orders Closing Restaurants and Bars

36.     On March 16, 2020, Governor Christopher T. Sununu of the State of New Hampshire issued Emergency Order No. 2 Pursuant to Executive Order No. 2020-04, pursuant to which all restaurants and bars throughout the State of New Hampshire were ordered to be closed and onsite food and beverage consumption in all restaurants and bars throughout the State of New Hampshire was prohibited as a result of, and in response to, the COVID-19 pandemic.

37.     On March 17, 2020, Governor Charles D. Baker of the Commonwealth of Massachusetts issued COVID-19 Order No. 13 in which he ordered the closure of all restaurants and bars throughout the Commonwealth of Massachusetts and prohibited onsite food and beverage consumption in all restaurants and bars throughout the Commonwealth of Massachusetts as a result of, and in response to, the COVID-19 pandemic.

38.     The aforesaid Orders closing restaurants and bars and onsite food and beverage consumption in all restaurants and bars in the Commonwealth of Massachusetts and State of New Hampshire remain in effect.

39.     As a result of the COVID-19 pandemic and in accordance with the aforesaid Orders closing restaurants and bars and onsite food and beverage consumption in all restaurants and bars throughout the Commonwealth of Massachusetts and State of New Hampshire, all of the plaintiffs' restaurants and bars have been, and remain, closed and forbidden from offering or providing onsite food or beverage consumption.

40.     The plaintiffs are no longer permitted to operate their restaurants and bars and are relegated only to carry out or delivery services.

41.     Carry out and delivery services are not feasible or sustainable for the plaintiffs given their menus, brand and business model, all of which were known or knowable to Cincinnati when it underwrote and agreed to insure the plaintiffs.

42.     The plaintiffs have suffered, and continue to suffer, direct physical loss of, or damage to, their property caused by COVID-19.

43.     Properties and businesses within one mile of each of the plaintiffs' insured locations have suffered, and continue to suffer, direct physical loss of, or damage to, their property as a result of COVID-19.

### E.     The Policy of Insurance

44.     On February 13, 2020, Cincinnati issued a commercial property policy of insurance, Policy No. EPP0568391, to "The Farm Bar and Grille" (the "Policy").[2] A true and accurate copy of the Policy is attached as Exhibit 1 and incorporated by reference.

45.     The Policy covers the period from February 13, 2020 through February 13, 2021.

---

[2]     In accordance with an endorsement entitled "Named Insured Schedule - Massachusetts", Form No. AA 906 A MA 09 18, BN Farm Essex, BN Ipswich, BN Marina, BNR Beverly, BNR Salisbury, BNR Methuen, BNR Farm Dover, BN Farm Manchester, BNR Hampton and BN Realty were added as named insureds to the Policy.

46.     The Policy insures against all risks of loss of, or damage to, property and ensuing business interruption and extra expense unless specifically excluded or limited in the Policy.

47.     When the Policy became effective, Cincinnati possessed knowledge of, or had the ability to possess knowledge about, COVID-19 and the fact that businesses in China, Italy and elsewhere across the world were being shuttered because of the presence and rapid spread of COVID-19.

48.     Despite this knowledge, Cincinnati issued and sold the Policy to the plaintiffs without any pandemic or virus exclusion or limitation in exchange for the plaintiffs' payment of a substantial premium, even though such exclusions and limitations are commonplace and widely used throughout the insurance industry.

49.     Slightly more than four weeks after Cincinnati issued and sold the Policy to the plaintiffs, the physical loss of, or damage to, property caused by COVID-19 and the dangerous conditions associated with that damage caused the plaintiffs to close all of their restaurants and bars.

50.     At all material times on and after March 16, 2020, the Policy was and remains in full force and effect.

51.     In pertinent part, the "Building and Personal Property" Coverage Form, Form FM 101 05 16, contained within the Policy provides as follows:

**SECTION A. COVERAGE**

We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

(emphasis in original).

52. Under the "Building and Personal Property" Coverage Form, a "loss" is defined as "accidental physical loss or accidental physical damage."

53. The "Building and Personal Property" Coverage Form further provides as follows:

    **5.**    **Coverage Extensions**

. . .

    (b)    **Business Income and Extra Expense**

    **(1)**    **Business Income**

We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss . . .

    **(2)**    **Extra Expense**

    **(a)** We will pay Extra Expense you sustain during the "period of restoration." Extra expense means necessary expenses you sustain (as described in Paragraphs **2(b), (c)** and **(d)** during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss . . .

**(3)** **Civil Authority**

When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by the civil authority as a result of the damage; and

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(emphasis in original)

54.     In pertinent part, the "Business Income (and Extra Expense) Coverage

Form", Form FA 213 05 16, contained within the Policy provides as follows:

**1.** **Business Income**

a.  We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss . . .

**2.** **Extra Expense**

**a.**  Extra Expense coverage is provided at the "premises" described in the Declarations only if the Declarations show that "Business Income" coverage applies at that "premises."

**b.** Extra Expense means necessary expenses you sustain (as described in Paragraphs **2.c., d.** and **e.**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

**c.** If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph **2.d.**) to:

    **(1)** Avoid or minimize the "suspension" of business and to continue "operations" either:

        **(a)** At the "premises"; or

        **(b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

    **(2)** Minimize the "suspension" of business if you cannot continue "operations."

. . .

**5.** <u>**Additional Coverages**</u>

. . .

**b.** <u>**Civil Authority**</u>

When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

    **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

    **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the

action is taken to enable a civil authority to have unimpeded access to the damaged property.

(emphasis in original).

55.     The Policy does not contain any endorsement or form which excludes or excepts from coverage, or which purports to exclude or except from coverage, losses caused by, or resulting from, a pandemic, a virus or a viral outbreak.

### F.     The Claim Under the Policy

56.     As a result of the COVID-19 pandemic and mandated closures of all of their restaurants and bars, the plaintiffs have incurred, and continue to incur, significant business income losses, extra expenses and losses as a result of civil authority.

57.     The plaintiffs made timely claim to Cincinnati under the Policy for their loss of business income, extra expenses and losses as a result of civil authority stemming from the COVID-19 pandemic.

58.     On March 25, 2020, Cincinnati issued a reservation of rights letter in which it posited that "the fact of the [COVID-19] pandemic, without more, is not direct physical loss (or damage) to property at the premises" and that "direct physical loss or damage generally means a physical effect on covered property, such as deformation, permanent change in physical appearance or other manifestation of a physical effect." A true and accurate copy of the March 25, 2020 letter is attached as Exhibit 2 and incorporated by reference.

59.     On April 21, 2020, the plaintiffs, through their undersigned counsel, sent a letter to Cincinnati in which they demanded withdrawal of the aforesaid reservation of

rights and a provision of coverage for their loss of business income claim. A true and accurate copy of the April 21, 2020 letter is attached as Exhibit 3 and incorporated by reference.

### G.    The Denial of Coverage

60.    On April 28, 2020, Cincinnati denied coverage under the Policy to the plaintiffs for their business income losses, extra expenses and losses caused by civil authority (the "Coverage Denial Letter"). A true and accurate copy of the Coverage Denial Letter is attached as Exhibit 4 and incorporated by reference.

61.    In pertinent part, the Coverage Denial Letter provides as follows:

> Cincinnati's investigation has found no evidence of direct physical loss or damage at your premises. Similarly, there is no evidence of damage to property at other locations, precluding coverage for orders of civil authority.
>
> . . .
>
> The claim does not involve direct, physical loss to property at your premises caused by a Covered Cause of Loss. You have not shown any direct physical loss to property, as required by the Policy. Accordingly, the Policy's insuring agreement is not met and coverage is unavailable under the Policy.
>
> . . .
>
> Like the Policy's insuring agreement, the Business Income and Extra Expense coverages require that there be direct physical loss or damage to Covered Property at the premises or within 1,000 feet of those premises. There is no evidence of any such physical loss or damage. Accordingly, the Business Income and Extra Expense requirements are not satisfied and coverage is unavailable under the Policy.
>
> . . .

Although you allegedly closed your business in response to a governmental order, there is no evidence that the order was entered because of direct damage to property at other locations or dangerous physical conditions at other locations. Moreover, the order does not restrict access to the area immediately surrounding your premises. Because these requisite elements of the Civil Authority coverage are not present here, coverage is unavailable under the Policy.

62.     The existence of infected surfaces and presence of the contaminant caused by COVID-19 on the hard surfaces commonly found in restaurants and bars (such as tables, countertops and handles) constitute "direct physical loss or damage" as contemplated by the Policy at the plaintiffs' premises.

63.     The "physical loss" or "physical damage" that triggers property, business interruption and civil authority coverage is not confined to the physical destruction of, or structural damage to, property.

64.     The presence of a contaminant, whether a chemical constituent or a contagion such as COVID-19, constitutes insured "physical loss" or "physical damage" to property and triggers coverage for resulting economic losses.

65.     "Physical loss" or "physical damage", as those terms are used in the Policy, includes conditions or contaminants that render the plaintiffs' property unusable, as occurred here.

66.     In order for the plaintiffs to be entitled to coverage under the Policy for loss of business income, extra expenses and losses as a result of civil authority, the plaintiffs' property is not required to be deformed, permanently changed in physical appearance or bear any manifestation of a physical effect.

67.     When the plaintiffs were unable to lawfully prepare and serve food and beverage onsite because of mandates issued by the Governors of the State of New Hampshire and Commonwealth of Massachusetts, their primary function to prepare and serve food and beverage onsite was seriously impaired, which impairment of function and value constitutes "physical loss" and/or "physical damage."

68.     Due to the widespread nature of the COVID-19 pandemic, all establishments across the Commonwealth of Massachusetts and State of New Hampshire have suffered direct physical loss or direct physical damage, which widespread damage caused the aforesaid Executive Orders to issue and remain in effect.

69.     The Policy does not contain any exclusion(s) or exception(s) to coverage which would apply to allow Cincinnati to deny coverage for losses caused by the COVID-19 pandemic or related actions of civil authorities taken in response to the COVID-19 pandemic.

70.     The Policy is an all-risk policy of insurance, and it does not exclude the losses that the plaintiffs have been caused, and continue to be caused, to suffer.

71.     At all times material hereto, economic losses occasioned by a pandemic have been a "Covered Cause of Loss" under the Policy.

72.     Cincinnati has improperly and unlawfully declined, neglected and refused to pay for the plaintiffs' losses of business income, extra expenses and losses caused by civil authority.

73.     The plaintiffs are entitled to recover under the Policy for their losses of business income, extra expenses and losses caused by civil authority.

74.     For the sole purpose of obviating the need to proceed to a reference proceeding with Cincinnati pursuant to G.L. c. 175, § 100, *et. seq.*, the plaintiffs and Cincinnati agreed that "both parties reserve all rights, including the right to conduct a[] [reference] should the Court rule there is coverage." A true and accurate copy of an email from Cincinnati's claims adjuster dated May 4, 2020 is attached as Exhibit 5 and incorporated by reference.

75.     Cincinnati has wrongfully failed, refused and neglected to afford coverage to the plaintiffs under the Policy for their business income, extra expense and civil authority claims under the Policy.

## COUNT I
### (Declaratory Judgment)

76.     The plaintiffs incorporate by reference paragraphs 1 through 75 of the Complaint as if fully set forth herein.

77.     The plaintiffs seek the Court's declaration of the parties' rights and duties under the policy pursuant to 28 U.S.C. § 2201.

78.     A justiciable controversy exists between the plaintiffs and Cincinnati about whether the Policy provides coverage for the plaintiffs' claim.

79.     At all times material hereto, the plaintiffs have been, and continue to be, entitled to recover under the Policy for their losses of business income, extra expenses

and civil authority losses as a result of the COVID-19 pandemic, including indemnity for all such losses.

80.     The plaintiffs seek declarations by this Court that (a) coverage is available and owed to the plaintiffs under the Policy for loss of business income, extra expenses and civil authority losses as a result of the COVID-19 pandemic, under which Policy Cincinnati improperly and unlawfully denied coverage, (b) Cincinnati owes the plaintiffs for their business income, extra expense and civil authority losses as a result of the COVID-19 pandemic, and (c) no exclusion in the Policy applies to bar, reduce or limit coverage for the plaintiffs' claims for loss of business income, extra expenses and civil authority losses as a result of the COVID-19 pandemic.

WHEREFORE, the plaintiffs, BN Farm LLC d/b/a The Farm Bar and Grille Essex, BNIpswich LLC d/b/a Fox Creek Tavern f/k/a En Fuego Cocina Mexicana, BN Marina LLC, BNR Beverly Inc. d/b/a En Fuego Beverly, BNR Salisbury LLC d/b/a Portside Waterfront Kitchen and Bar, BNR Methuen LLC d/b/a The Miller's Tavern a/k/a The Miller Tavern, BNRFarmDover, LLC d/b/a The Farm Bar and Grille Dover, BNRFarmManch LLC d/b/a The Farm Bar and Grille Manchester, BNRHampton LLC d/b/a The 401 Tavern and BN Realty Limited Liability Company, request that this Court declare that (a) coverage is available and owed to BN Farm LLC d/b/a The Farm Bar and Grille Essex, BNIpswich LLC d/b/a Fox Creek Tavern f/k/a En Fuego Cocina Mexicana, BN Marina LLC, BNR Beverly Inc. d/b/a En Fuego Beverly, BNR Salisbury LLC d/b/a Portside Waterfront Kitchen and Bar, BNR Methuen LLC d/b/a The Miller's Tavern a/k/a The Miller Tavern, BNRFarmDover, LLC d/b/a The Farm Bar

and Grille Dover, BNRFarmManch LLC d/b/a The Farm Bar and Grille Manchester,

BNRHampton LLC d/b/a The 401 Tavern and BN Realty Limited Liability Company

under the Policy for their business income, extra expense and civil authority losses,

under which Policy Cincinnati improperly and unlawfully denied coverage, (b)

Cincinnati owes BN Farm LLC d/b/a The Farm Bar and Grille Essex, BNIpswich LLC

d/b/a Fox Creek Tavern f/k/a En Fuego Cocina Mexicana, BN Marina LLC, BNR

Beverly Inc. d/b/a En Fuego Beverly, BNR Salisbury LLC d/b/a Portside Waterfront

Kitchen and Bar, BNR Methuen LLC d/b/a The Miller's Tavern a/k/a The Miller

Tavern, BNRFarmDover, LLC d/b/a The Farm Bar and Grille Dover, BNRFarmManch

LLC d/b/a The Farm Bar and Grille Manchester, BNRHampton LLC d/b/a The 401

Tavern and BN Realty Limited Liability Company for their business income, extra

expense and civil authority losses, and (c) no exclusion in the Policy applies to bar,

reduce or limit coverage for the plaintiffs' claims for loss of business income, extra

expenses and civil authority losses as a result of the COVID-19 pandemic.

## <u>COUNT II</u>
### (Breach of Contract – Business Interruption and Extra Expense)

81.     The plaintiffs incorporate by reference paragraphs 1 through 80 of the

Complaint as if fully set forth herein.

82.     The Policy is a valid and enforceable contract between the plaintiffs and

Cincinnati.

83.     In the Policy, Cincinnati promised to pay for losses of business income

incurred by the plaintiffs as a result of causes of loss not excluded including, but not

limited to, losses of business income and extra expense sustained by the plaintiffs as a result of a suspension of their business operations.

84.     COVID-19 has caused, and continues to cause, direct physical loss of or damage to the plaintiffs' property as well as the property of those upon whom the plaintiffs rely.

85.     Because of the direct physical loss of or damage to their property, the plaintiffs have experienced, and continue to experience, a slowdown or cessation of their business (i.e., a "suspension", as defined by and used in the Policy).

86.     These suspensions and losses triggered the Policy's business income and extra expense coverages.

87.     The plaintiffs have complied with all applicable Policy provisions, including paying premiums and providing timely notice of their claim.

88.     In material breach of the Policy, Cincinnati has unjustifiably refused to pay for the plaintiffs' covered losses and expenses.

89.     The plaintiffs have suffered, and continue to suffer, damages as a result of Cincinnati's material breach of the Policy.

90.     The plaintiffs are entitled to damages as a result of Cincinnati's material breach in an amount to be determined at trial, including prejudgment and post-judgment interest and any and all other costs and relief that this Court deems proper.

WHEREFORE, the plaintiffs, BN Farm LLC d/b/a The Farm Bar and Grille Essex, BNIpswich LLC d/b/a Fox Creek Tavern f/k/a En Fuego Cocina Mexicana, BN Marina LLC, BNR Beverly Inc. d/b/a En Fuego Beverly, BNR Salisbury LLC d/b/a

Portside Waterfront Kitchen and Bar, BNR Methuen LLC d/b/a The Miller's Tavern a/k/a The Miller Tavern, BNRFarmDover, LLC d/b/a The Farm Bar and Grille Dover, BNRFarmManch LLC d/b/a The Farm Bar and Grille Manchester, BNRHampton LLC d/b/a The 401 Tavern and BN Realty Limited Liability Company, demand judgment against the defendant, The Cincinnati Casualty Company, in the full amount of their damages, plus interest, costs and attorney's fees.

## COUNT III
### (Breach of Contract – Civil Authority)

91.     The plaintiffs incorporate by reference paragraphs 1 through 90 of the Complaint as if fully set forth herein.

92.     The Policy is a valid and enforceable contract between the plaintiffs and Cincinnati.

93.     In the Policy, Cincinnati promised to pay for the plaintiffs' losses of business income and extra expense incurred as a result of certain actions taken by civil authorities that prohibit access to their premises.

94.     COVID-19 related direct physical loss of or damage to properties within a one-mile radius of the plaintiffs' restaurants and bars caused civil authorities to prohibit access to the plaintiffs' premises.

95.     The plaintiffs have experienced, and continue to experience, a loss under the Policy's civil authority coverage arising from the direct physical loss of or damage to property caused by the COVID-19 pandemic and the resulting state and local orders.

96.     These actions, losses and expenses triggered civil authority coverage under the Policy.

97.     The plaintiffs have complied with all applicable Policy provisions, including paying premiums and providing timely notice of their claim.

98.     In material breach of the Policy, Cincinnati unjustifiably and improperly refused to pay for the plaintiffs' losses and expenses.

99.     The plaintiffs have suffered, and continue to suffer, damages as a result of Cincinnati's material breach of the Policy.

100.    The plaintiffs are entitled to damages as a result of Cincinnati's material breach in an amount to be determined at trial, including prejudgment and post-judgment interest and any other costs and relief that this Court deems proper.

WHEREFORE, the plaintiffs, BN Farm LLC d/b/a The Farm Bar and Grille Essex, BNIpswich LLC d/b/a Fox Creek Tavern f/k/a En Fuego Cocina Mexicana, BN Marina LLC, BNR Beverly Inc. d/b/a En Fuego Beverly, BNR Salisbury LLC d/b/a Portside Waterfront Kitchen and Bar, BNR Methuen LLC d/b/a The Miller's Tavern a/k/a The Miller Tavern, BNRFarmDover, LLC d/b/a The Farm Bar and Grille Dover, BNRFarmManch LLC d/b/a The Farm Bar and Grille Manchester, BNRHampton LLC d/b/a The 401 Tavern and BN Realty Limited Liability Company, demand judgment against the defendant, The Cincinnati Casualty Company, in the full amount of their damages, plus interest, costs and attorney's fees.

## JURY DEMAND

The plaintiffs, BN Farm LLC d/b/a The Farm Bar and Grille Essex, BNIpswich LLC d/b/a Fox Creek Tavern f/k/a En Fuego Cocina Mexicana, BN Marina LLC, BNR Beverly Inc. d/b/a En Fuego Beverly, BNR Salisbury LLC d/b/a Portside Waterfront Kitchen and Bar, BNR Methuen LLC d/b/a The Miller's Tavern a/k/a The Miller Tavern, BNRFarmDover, LLC d/b/a The Farm Bar and Grille Dover, BNRFarmManch LLC d/b/a The Farm Bar and Grille Manchester, BNRHampton LLC d/b/a The 401 Tavern and BN Realty Limited Liability Company, claim a trial by jury on all counts so triable.

> BN FARM LLC d/b/a THE FARM BAR AND GRILLE ESSEX, BNIPSWICH LLC d/b/a FOX CREEK TAVERN f/k/a EN FUEGO COCINA MEXICANA, BN MARINA LLC, BNR BEVERLY INC d/b/a EN FUEGO BEVERLY, BNR SALISBURY LLC d/b/a PORTSIDE WATERFRONT KITCHEN & BAR, BNR METHUEN LLC d/b/a THE MILLER'S TAVERN a/k/a THE MILLER TAVERN, BNFARMDOVER, LLC d/b/a THE FARM BAR & GRILLE DOVER, BNRFARMMANCH LLC d/b/a THE FARM BAR & GRILLE MANCHESTER, BNR HAMPTON LLC d/b/a THE 401 TAVERN and BN REALTY LIMITED LIABILITY COMPANY,
> By their attorney,
>
> */s/ Seth H. Hochbaum*
> SETH H. HOCHBAUM - BBO NO. 568118
> REGNANTE STERIO LLP
> Edgewater Office Park
> 401 Edgewater Place, Suite 630
> Wakefield, MA 01880-6210
> shochbaum@regnante.com
> (781) 246-2525

Dated: May 7, 2020