UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BN FARM LLC d/b/a THE FARM BAR AND GRILLE ESSEX, BN IPSWICH LLC d/b/a FOX CREEK TAVERN f/k/a EN FUEGO COCINA MEXICANA, BN MARINA LLC, BNR BEVERLY INC d/b/a EN FUEGO BEVERLY, BNR SALISBURY LLC d/b/a PORTSIDE WATERFRONT KITCHEN & BAR, BNR METHUEN LLC d/b/a THE MILLER'S TAVERN a/k/a THE MILLER TAVERN, BNFARMDOVER, LLC d/b/a THE FARM BAR & GRILLE DOVER, BNRFARMMANCH LLC d/b/a THE FARM BAR & GRILLE MANCHESTER, BNR HAMPTON LLC d/b/a THE 401 TAVERN and BN REALTY LIMITED LIABILITY COMPANY,<br>   Plaintiffs/Defendants-in-Counterclaim,<br><br>v.<br><br>THE CINCINNATI CASUALTY COMPANY,<br>   Defendant/Plaintiff-in-Counterclaim. | **Civil Action No. 1:20-cv-10874-MBB** |

## JOINT STATEMENT OF FACTS

The parties stipulate to the following facts in relation to the Cross Motions for Summary Judgment that the parties are filing in the above-captioned case. The stipulation is limited to the pending matter and motions. The parties expressly reserve the right to contest the following facts in the event the Motions for Summary Judgment are denied:

1. The plaintiffs own and operate several restaurants, which contain bars, in Massachusetts and New Hampshire that offer onsite food and alcohol service to their patrons. Since opening their restaurants, the plaintiffs' brand and business model has been based upon a

1

full service, in-person food and alcohol consumption model which represents the primary source of plaintiffs' customers and business.

2. On January 30, 2020, the World Health Organization designated the 2019 novel Coronavirus known as SARS-CoV-2. SARS-CoV-2 causes a viral disease in humans called COVID-19. The WHO declared the COVID-19 outbreak a Public Health Emergency of International Concern.

3. On January 31, 2020, United States Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the entire United States

4. COVID-19 is a highly contagious and, at times, fatal respiratory disease.

5. COVID-19 has several modes of transmission, including through symptomatic transmission, pre-symptomatic transmission or asymptomatic transmission.

6. Symptomatic transmission refers to transmission by an individual who is experiencing symptoms associated with the virus who then transfers COVID-19 to another individual.

7. Studies indicate COVID-19 is primarily transmitted from infected people to others when people are in close contact with each other (within about 6 feet, or 2 arm lengths), through respiratory droplets.

8. The incubation period for COVID-19 — the time between exposure to the virus (becoming infected) and symptom onset — averages 5-6 days; however, the incubation period can extend up to 14 days.

9. During the incubation period, also known as the "pre-symptomatic" period, some infected persons can be contagious such that transmission can occur before the infected person manifests or experiences any symptoms.

10. Stainless steel, plastic, glass and copper are all used in relation to the plaintiffs' food preparation and/or service.

11. On March 11, 2020, the World Health Organization declared the COVID-19 outbreak as a pandemic, which declaration remains in effect.

12. On March 10, 2020, Governor Charles D. Baker of Massachusetts issued Governor's Declaration of a State of Emergency Due to COVID-19 in which he declared a State of Emergency in Massachusetts in response to COVID-19 and to prevent the spread of COVID-19.

13. On March 13, 2020, President Donald J. Trump made a determination of emergency under the Stafford Act due to the COVID-19 pandemic.

14. On March 13, 2020, Governor Christopher T. Sununu of New Hampshire issued Executive Order 2020-04 in which he declared a State of Emergency in New Hampshire due to COVID-19 and to prevent the spread of COVID-19.

15. The declaration of the States of Emergency in Massachusetts and New Hampshire remain in effect.

16. Governor Sununu issued Emergency Order No. 2 Pursuant to Executive Order No. 2020-04 on March 16, 2020. The order includes text stating that food and beverage sales were restricted to carry-out, delivery, curbside pick-up, and drive through only, to the extent permitted by current law. The order further stated that no onsite consumption was permitted, and all onsite consumption areas in restaurants, diners, bars, saloons, private clubs, or any other establishment that offers food and beverages for sale shall be closed to customers.

17. Governor Baker issued COVID-19 Order No. 13 on March 17, 2020, which stated that restaurants, bars, and other retail establishments that sell food and beverages to the public

provide Covid-19 Essential Services and are designated as such in Exhibit A to the Order. Per the Order, these establishments were, therefore, encouraged to continue to offer food and beverages for take-out and delivery provided that they follow the social distancing protocols set forth in Department of Public Health guidance. Restaurants, bars, or other establishments that offer food or beverages to the public were not permitted to allow on-premises consumption of food or beverages.[1]

18.     The Executive Orders prohibiting onsite food and beverage consumption in all restaurants and bars in Massachusetts and New Hampshire remained in effect until June 8, 2020, on which date outdoor dining became permissible in Massachusetts, and until May 18, 2020, on which date outdoor dining became permissible in New Hampshire.

19.     The plaintiffs did not provide either onsite or carryout/delivery service from March 16, 2020 (New Hampshire) and March 17, 2020 (Massachusetts) until April 22, 2020.

20.     On various dates between April 22, 2020 and May 13, 2020, the plaintiffs began providing carryout and delivery services at each of their locations.

21.     Subject to reduced capacity and other restrictions, the plaintiffs resumed onsite food and alcohol service in their New Hampshire restaurants and bars on June 15, 2020 and in their Massachusetts restaurants on June 22, 2020.

22.     The tables at the plaintiffs' restaurants are constructed of wood.

23.     The bars at the plaintiffs' restaurants are constructed of wood, cement, metal and/or quartz.

---

[1]     Governor Sununu's Emergency Order No. 2 Pursuant to Executive Order No. 2020-04 dated March 16, 2020 and Governor Baker's COVID-19 Order No. 13 dated March 17, 2020 shall collectively be referred to as the "Executive Orders."

24. On February 13, 2020, Cincinnati issued a commercial property policy of insurance, Policy No. EPP0568391, to First Named Insured "The Farm Bar and Grille" (the "Policy").[2]

25. The Policy covers the period from February 13, 2020 through February 13, 2021.

26. The Building and Personal Property Coverage Form, Form FM 101 05 16, states:

> **SECTION A. COVERAGE**
>
> We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

(emphasis in original).

27. Form FM 101 05 16 states: "'Loss' means accidental physical loss or accidental physical damage."

28. The Policy does not define either "physical loss" or "physical damage."

29. Form FM 101 05 16 states:

> **5.    Coverage Extensions**
>
> . . .
>
> **(b)    Business Income and Extra Expense**
>
> **(1)    Business Income**
>
> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss . . .

---

[2]    In accordance with an endorsement entitled "Named Insured Schedule - Massachusetts", Form No. AA 906 A MA 09 18, BN Farm Essex, BN Ipswich, BN Marina, BNR Beverly, BNR Salisbury, BNR Methuen, BNR Farm Dover, BN Farm Manchester, BNR Hampton and BN Realty were added as named insureds under the Policy.

    **(2)**     **Extra Expense**

        **(a)** We will pay Extra Expense you sustain during the "period of restoration." Extra expense means necessary expenses you sustain (as described in Paragraphs **2(b), (c)** and **(d)** during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss . . .

    **(3)**     **Civil Authority**

    When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

        **(a)** Access to the area immediately surrounding the damaged property is prohibited by the civil authority as a result of the damage; and

        **(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

30.     Form FM 101 05 16 defines "period of restoration" as:

    **11.**     "Period of Restoration" means the period of time that:

        **a.**     Begins at the time of direct "loss".

        **b.**     Ends on the earlier of:

            **(1)**     The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

            **(2)**     The date when business is resumed at a new permanent location.

31.     In pertinent part, the Business Income (and Extra Expense) Coverage Form, Form FA 213 05 16, states:

6

1. **Business Income**

    a. We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss . . .

2. **Extra Expense**

    a. Extra Expense coverage is provided at the "premises" described in the Declarations only if the Declarations show that "Business Income" coverage applies at that "premises."

    b. Extra Expense means necessary expenses you sustain (as described in Paragraphs **2.c., d.** and **e.**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

    c. If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph **2.d.**) to:

      **(1)** Avoid or minimize the "suspension" of business and to continue "operations" either:

        **(a)** At the "premises"; or

        **(b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

      **(2)** Minimize the "suspension" of business if you cannot continue "operations."

    . . .

5. **Additional Coverages**

    . . .

    b. **Civil Authority**

    When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by action of

> civil authority that prohibits access to the "premises", provided that both of the following apply:
>
> > **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and
> >
> > **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

32. In 2006, the Insurance Services Office ("ISO"), an insurance industry organization that develops standardized insurance forms for use by insurers, submitted an exclusionary endorsement, as set forth in ISO Circular LI-CF-2006-175, entitled Exclusion of Loss Due to Virus or Bacteria.

33. The Policy does not contain the virus exclusion related to Circular LI-CF-2006-175.

34. On March 16, 2020, the plaintiffs presented a claim to Cincinnati under the Policy for their alleged loss of business income due to the Coronavirus outbreak.

35. On March 25, 2020, Cincinnati issued a reservation of rights letter and request for information.

36. On April 21, 2020, the plaintiffs requested that Cincinnati rescind its reservation of rights and afford coverage for their alleged loss of business income claim. In addition, the April 21, 2020 letter responded to Cincinnati's request for information and documentation.

37. On April 28, 2020, Cincinnati denied coverage under the Policy to the plaintiffs for their alleged business income losses, extra expenses and any losses caused by civil authority (the "Coverage Denial Letter").

38. On May 7, 2020, the plaintiffs filed a Complaint in the United States District Court for the District of Massachusetts seeking, among other things, a declaratory judgment that coverage is available and owed to the plaintiffs under the Policy.

39. On July 22, 2020, Cincinnati filed an Answer and Counterclaim seeking, among other things, a declaratory judgment that coverage is not available under the Policy.

40. The parties agree and stipulate that Massachusetts substantive law governs the issues in dispute.

| | |
|---|---|
| BN FARM LLC d/b/a THE FARM BAR AND GRILLE ESSEX, BNIPSWICH LLC d/b/a FOX CREEK TAVERN f/k/a EN FUEGO COCINA MEXICANA, BN MARINA LLC, BNR BEVERLY INC d/b/a EN FUEGO BEVERLY, BNR SALISBURY LLC d/b/a PORTSIDE WATERFRONT KITCHEN & BAR, BNR METHUEN LLC d/b/a THE MILLER'S TAVERN a/k/a THE MILLER TAVERN, BNFARMDOVER, LLC d/b/a THE FARM BAR & GRILLE DOVER, BNRFARMMANCH LLC d/b/a THE FARM BAR & GRILLE MANCHESTER, BNR HAMPTON LLC d/b/a THE 401 TAVERN and BN REALTY LIMITED LIABILITY COMPANY, By their attorney, | THE CINCINNATI CASUALTY COMPANY, By its attorneys, |
| */s/ Seth H. Hochbaum* | */s/ Robert L. Ciociola* |
| SETH H. HOCHBAUM, BBO NO. 568118 REGNANTE STERIO LLP Edgewater Office Park 401 Edgewater Place, Suite 630 Wakefield, MA 01880-6210 (781) 246-2525 shochbaum@regnante.com | ROBERT L. CIOCIOLA, BBO NO. 084140 NORA R. ADUKONIS, BBO NO. 676932 LITCHFIELD CAVO LLP 6 Kimball Lane, Suite 200 Lynnfield, MA 01940 (781) 309-1503 ciociola@litchfieldcavo.com adukonis@litchfieldcavo.com |

Dated: December 4th, 2020